**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:95-cr-66(2)** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **RUFUS E. BROWN,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Rufus Brown's *pro se* Motion for Compassionate Release or Sentence Reduction, pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 426), and a counseled Supplemental Brief in Support of that Motion, (ECF No. 455). The United States responded to both the Motion and the Supplemental Brief (ECF Nos. 428, 459), and Defendant filed a counseled Reply (ECF No. 462) and a Notice of Supplemental Authority (ECF No. 464). For the reasons that follow, this Court **GRANTS** Mr. Brown's Motion (ECF No. 426).

## I. BACKGROUND

In 1995, Mr. Brown and his co-defendant, Mr. Michael Phipps, were the "ringleaders" of a conspiracy to commit a week-long string of robberies. (ECF No. 85 ¶ 38). Mr. Brown and Mr. Phipps recruited younger people to go into establishments and commit the robberies while they waited nearby. (ECF 455 at 5.) As a result, Mr. Brown never entered any of the establishments that the group targeted. (*Id.*) No one was physically harmed in any of the crimes, and the money taken totaled approximately $15,000. (*Id.*).

Mr. Brown was convicted of Hobbs Act robbery and conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); robbery of a post office, in violation of 18 U.S.C. § 2114(a); and six counts of carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). At the time that Mr. Brown was sentenced, in February 1996, § 924(c) mandated consecutive 20-year terms for each violation of § 924(c) after the first, i.e., 924(c) violations two through six. As a result, he was sentenced to 1430 months of imprisonment—over 119 years. (ECF No. 137). 1260 of those months—105 years—resulted from "stacking" of the § 924(c) counts. (*Id.*). Mr. Brown was also sentenced to three years of supervised release to follow his term of incarceration. (*Id.*).

In 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act eliminated the practice of stacking § 924(c) charges in a first offense; now, these stacked sentences are permissible only after a subsequent conviction. *See* First Step Act, § 403(a); 18 U.S.C. § 924(c). In other words, the imposition of stacked mandatory minimum sentences is only permitted "[i]n the case of a violation of [924(c)] that occurs *after* a prior conviction under this subsection has become final." 18 U.S.C. § 924(c) (emphasis added); *see also* First Step Act § 403(a). The First Step Act, however, did not provide direct retroactive relief for people like Mr. Brown sentenced under § 924(c) before the First Step Act's enactment.

In June 2021, Mr. Brown filed a Motion for Compassionate Release or Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing, among other things, that the First Step Act's nonretroactive modification to the sentencing of § 924(c) convictions provides an "extraordinary and compelling reason," as required by statute, to reduce his sentence. (ECF No. 426). The Government responded to Mr. Brown's Motion, arguing that the sentencing disparity generated by the First Step Act does not constitute an "extraordinary and compelling reason," and that, even if

2

a sentence reduction is appropriate, immediate release is not. (*See* ECF No. 428 at 2-6). In so doing, the Government acknowledged that a sentence of over 100 years is disproportionate to the severity of Mr. Brown's crimes and that Mr. Brown presents "a significantly reduced risk of recidivism" because of his age. (*Id.* at 7).

One month later, in July 2021, Mr. Brown was appointed CJA counsel, who was later joined on the case by retained counsel. In November 2022, Mr. Brown's Motion was held in abeyance pending resolution of *United States v. McCall* in Sixth Circuit Case No. 21-3400, which was set to address the propriety of nonretroactive changes in sentencing law as part of the compassionate release analysis. (ECF No. 438). The Sixth Circuit decided *McCall* in December 2022, concluding that courts could not consider nonretroactive sentencing developments like the change in § 924(c). 56 F.4th 1048, 1055 (6th Cir. 2022).

In April 2023, however, the U.S. Sentencing Commission published preliminary amendments to the Sentencing Guidelines that included proposed revisions to its policy statement that applies to motions for sentence reduction or compassionate release, U.S.S.G. § 1B1.13. Specifically, the Commission responded to *McCall* and similar cases, explaining that nonretroactive sentencing changes, under certain circumstances, could indeed be "extraordinary and compelling." Counsel filed a Supplemental Brief to Mr. Brown's Motion in June 2023, addressing the proposed Amended Policy Statement (ECF No. 455), to which the Government responded (ECF No. 459), and Mr. Brown replied (ECF No. 462). The Amended Policy Statement became effective and binding on this Court on November 1, 2023, and this Court held oral argument on the Motion on January 23, 2024, (ECF No. 465), following Mr. Brown's submission of Supplemental Authority, (ECF No. 464). Mr. Brown's Motion for Compassionate Release or Sentence Reduction is now fully briefed and ripe for review.

## II. LEGAL STANDARD

A sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

This Court follows a three-step analysis when considering § 3582(c)(1)(A) motions. *See United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020). First, this Court considers whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* Second, this Court determines whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* at 1108. And third, the Court analyzes the factors set forth in 18 U.S.C. § 3553(a) to determine whether, in the Court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). A district court's decision under § 3582(c)(1)(A) will be reviewed for abuse of discretion and a district court "must supply 'specific factual reasons'" in support of its decision. *Id.* at 1112.

### III. LAW & ANALYSIS

#### A. Exhaustion

This Court first examines whether Mr. Brown has satisfied § 3582(c)(1)(A)'s exhaustion requirement. Mr. Brown indicates that he submitted a request for compassionate release to the warden at FCI Williamsburg on April 17, 2020, and that the BOP denied his request. (ECF No. 455 at 10). Mr. Brown then appealed the warden's decision but did not receive a response due to institutional shut-downs stemming from the COVID-19 pandemic. (*Id.*). The Government

acknowledges that Mr. Brown has therefore exhausted his administrative remedies, pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* ECF No. 428 at 2).

## B. Extraordinary and Compelling Reasons

Next, this Court considers whether "extraordinary and compelling reasons warrant" a sentence reduction under 18 U.S.C. § 3852(c)(1)(A)(i). Section 3582(c) itself does not define what reasons qualify as "extraordinary and compelling." Congress, however, delegated the authority to the Sentencing Commission, explaining that it "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

### 1. The Evolution of § 924(c)

Mr. Brown was sentenced to 1,430 months, or over 119 years, for his role in a series of armed robberies. Only fourteen years of the sentence imposed by the trial court resulted from charges for the robberies themselves; the remaining 105 years were the result of "stacked" firearm counts under 18 U.S.C. § 924(c), which, at the time, required the sentencing court to impose consecutive 20-year terms for each § 924(c) conviction after the first. "Stacked" sentences were criticized as often excessively harsh, since "punishing first offenders with twenty-five-year sentences does not deter crime as much as it ruins lives." *Deal v. United States*, 508 U.S. 129, 146 n.10 (1993) (Stevens, J., dissenting); see also U.S. Sentencing Comm'n, *2011 Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 359 (2011) ("The 'stacking' of mandatory minimum penalties for multiple violations of section 924(c) results in excessively severe and unjust sentences in some cases.").

And finally, in 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act eliminated the practice of stacking § 924(c) charges in a first

offense; now, the imposition of stacked 20-year mandatory minimum sentences is only permitted "[i]n the case of a violation of [924(c)] that occurs *after* a prior conviction under this subsection has become final."  18 U.S.C. § 924(c) (emphasis added); *see also* Pub. L. No. 115-391 § 403(a). Because Mr. Brown's second through sixth § 924(c) convictions were all adjudicated at once, if sentenced today, Mr. Brown would likely face a sentence of 530 months—or 44 years and 2 months.  The First Step Act, however, does not generally provide retroactive relief for those who were sentenced prior to its effective date.  *See United States v. Richardson*, 948 F.3d 733, 748-49 (6th Cir. 2020).

### 2.  *The Evolution of Compassionate Release or Sentence Reduction Law*

Nonetheless, since 2018, this Court has on occasion concluded that a drastic change in a sentence caused by the First Step Act's amendment of § 924(c) can constitute an "extraordinary and compelling reason" for compassionate release or sentence reduction if combined with other factors.  *See e.g., United States v. Taniguchi*, No. 2-00-CR-50, 2020 WL 6390061, at *5-6 (S.D. Ohio Nov. 2, 2020) (citing *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *8-9 (M.D. Tenn. Mar. 4, 2020) (finding that a substantial change in the defendant's mandatory minimum sentence, the defendant's age, chronic illness, and time served collectively constitute extraordinary and compelling reasons for a sentence reduction)).

This Court's wide discretion to determine what constituted "exceptional and compelling reasons" stemmed from an unintentional anomaly created by the First Step Act.  Specifically, in the past, only the BOP could move courts for compassionate release, which it did sparingly.  *See United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021).  But the First Step Act enabled courts for the first time to entertain motions for compassionate release initiated by defendants themselves. *See* 18 U.S.C. § 3582(c)(1)(A).  It left intact, however, the Sentencing Commission's Policy

Statement offering guidance on the compassionate release framework, which, at the time, only addressed situations in which the BOP initiated the motion. *See Jones*, 980 F.3d at 1101 (concluding that the then-existing policy statement did not apply to defendant-initiated motions). The Commission lost its quorum shortly after the First Step Act was passed and was therefore "unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes." *United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021). As a result, courts had wide latitude to define "extraordinary and compelling." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (noting that "[u]ntil the Sentencing Commission updates its policy statement to include defendant-filed motions, district courts retain discretion to define 'extraordinary and compelling' without reference to the Sentencing Commission's guidance.").

In 2022, however, the Sixth Circuit, sitting *en banc*, considered whether such nonretroactive changes might be considered "extraordinary and compelling circumstances." *McCall*, 56 F.4th 1048 (6th Cir. 2022). The court concluded that nonretroactive changes in the law, like the First Step Act's amendment of § 924(c), are not "extraordinary and compelling circumstances" that can form the basis of a sentence reduction, whether "considered alone or together with other factors." *Id.* at 1065-66.

The Sixth Circuit reasoned that while the relevant phrase—"extraordinary and compelling"—is alone unilluminating as to the specific type of circumstance that warrants relief, the context of our sentencing system provides clarity. *McCall*, 56 F.4th at 1055. First, with respect to the term "extraordinary," the court noted that it "is the expected outcome in our legal system" that legal developments "apply only to 'defendants not yet sentenced,'" and that "what is expected cannot be extraordinary." *Id.* at 1056. Second, with respect to the word compelling, the court concluded that there is "little compelling about the duration of a lawfully imposed sentence." *Id.*

After considering context, the Sixth Circuit concluded that the phrase "extraordinary and compelling" is unambiguous. *Id.* at 1064. Accordingly, the Government now argues that the Sentencing Commission's Amended Policy Statement must bow to the Sixth Circuit's interpretation in *McCall* because the Commission's interpretation runs afoul of the unambiguous meaning of the statutory text.

In reaching its conclusion, however, the Sixth Circuit noted that "Congress has delegated to the Commission the task of 'describ[ing] what should be considered extraordinary and compelling reasons . . . .' 28 U.S.C. § 994(t)" and expressly withheld judgment on "[w]hether the Commission could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language." *Id.* at 1054 n.3.

The recently issued Amended Policy Statement did just that. The Commission eventually regained its quorum and issued, among other provisions, § 1B1.13(b)(6), which explains that an "extraordinary and compelling reason" exists when a nonretroactive change in the law that has created a gross disparity between an unusually long sentence (of which the defendant has served at least 10 years) and the sentence likely to be imposed at the time the motion is filed. Given that the Sixth Circuit decided *McCall* in the absence of an applicable policy statement, and explicitly left open the possibility that a provision such as § 1B1.13(b)(6) could abrogate its holding, this Court is free to resolve that threshold question in the first instance: does the Sixth Circuit's conclusion in *McCall* or U.S.S.G. § 1B1.13(b)(6) control this Court's ability to consider a nonretroactive change in the law?

### 3.  U.S.S.G. § 1B1.13(b)(6) or McCall: Which Controls?

Congress vested the Sentencing Commission with "significant discretion in formulating guidelines," *Mistretta v. United States*, 488 U.S. 361, 377 (1989), including the power "to issue binding policy statements," *United States v. Horn*, 679 F.3d 397, 404 (6th Cir. 2012).  Only if "the Commission's revised commentary is at odds with [the statute's] plain language" must the Commission's interpretation "give way" to the statutory text.  *United States v. LaBonte*, 520 U.S. 751, 757 (1997).  This Court cannot see how the phrase "extraordinary and compelling" is a "specific directive" to which the Commission's interpretation here did not "bow."  *LaBonte*, 520 U.S. at 757; *see also United States v. Padgett*, No. 5:06-cr-00013, at 9 (N.D. Fla. Jan. 30, 2024) (concluding that "[t]he Commission did its part by adopting § 1B1.13(b)(6), which would survive scrutiny under *LaBonte*").  In fact, Congress explicitly instructed the Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples."  § 994(t).

And the Commission's description of what is "extraordinary and compelling" is binding on this Court.  Section 3582(c)(2) "empowers a district court to retroactively reduce a defendant's sentence based on a subsequent reduction in the Guidelines only 'if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" and "[t]he use of the word 'if' indicates that the district court's power is conditioned upon the Commission's policy statement."  *Horn*, 679 F.3d at 401.

In fact, the Commission explained that § 1B1.13(b)(6) was designed to respond directly to a circuit split of which *McCall* was a part, and that, in the Commission's view, it was better

positioned to resolve the issue in the first instance than the Supreme Court.[1] Its decision to do so was not without precedent. The Supreme Court has previously deferred to the Commission to resolve a circuit split, explaining that because the Commission was a unique creature with a "statutory duty 'periodically [to] review and revise' the Guidelines" that "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348 (1991) (quoting 28 U.S.C. § 994(*o*)). That is exactly what the Commission did here.

The Government urges that this Court should instead follow the analysis of a district court in the Eastern District of Pennsylvania, which called into question the authority of the Commission to promulgate § 1B1.13(b)(6), and at the very least, concluded that it did not have the authority to apply the provision since it was bound by Third Circuit precedent that resembles *McCall*. *See generally United States v. Carter*, --- F.Supp.3d ----, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024). The facts animating *Carter* are similar to the case *sub judice*: Carter was convicted of several § 924(c) charges, for which he received a "stacked" sentence totaling 70 years. *Id.* at *1. Carter moved for a sentence reduction, pointing to the recently promulgated § 1B1.13(b)(6). *Id.* The court in *Carter* relied on *Neal v. United States*, 516 U.S. 284, 290 (1996), in which the Supreme Court held that a prior judicial construction of a mandatory minimum statute eclipsed newly issued Commission Guidelines that adopted a contrary interpretation. 516 U.S. 284, 290 (1996). But as Mr. Brown points out, the Court in *Neal* was weighing differing interpretations of a mandatory

---

[1] U.S. Sentencing Commission, AMENDMENTS TO THE SENTENCING GUIDELINES, POLICY STATEMENTS, OFFICIAL COMMENTARY, AND STATUTORY INDEX (eff. Nov. 1, 2023), available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

minimum statute for which Congress had not explicitly delegated interpretative authority to the Commission. Here, however, Congress *did* delegate authority to the Commission to interpret the meaning of the phrase "extraordinary and compelling." And when "Congress entrusts to the [Commission], rather than to the courts, the primary responsibility for interpretating the statutory terms[,] . . . [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *see also United States v. Capps*, No. 1:11-cr-00108, at 19 (E.D. Mo. Jan. 31, 2024) (applying this principle to Congress's instruction to the Commission to define "extraordinary and compelling"). Of course, the Commission is not free to adopt irrelevant or nonsensical interpretations, but in this Court's view, § 1B1.13(b)(6) "does not even approach these limits of the delegated authority," *Batterton*, 432 U.S. at 428, particularly in light of the Commission's extensive expertise in sentencing.

This Court's view on the scope of the Commission's authority is buttressed by the circuit split that was brewing on this issue before the Commission weighed in. Specifically, no fewer than four courts of appeals had concluded that the text of § 3582(c)(2) permitted courts to consider nonretroactive sentencing developments in the compassionate release framework. *See States v. Ruvalcaba*, 26 F.4th 14, 16, 26-28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 286-88 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021). On the other hand, several other courts of appeals had reached the same conclusion as *McCall*. *See United States v. Andrews*, 12 F.4th 255, 260-62 (3d Cir. 2021); *United States v. McMaryion*, 64 F.4th 257, 259-60 (5th Cir. 2023); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022). That split

alone suggests an ambiguity to the text of § 3582(c)(1)(A). *See Padgett*, No. 5:06-cr-00013, at 6 (concluding that the circuit split "suggests the meaning of 'extraordinary and compelling' is not as clear as the government now asserts.").

Moreover, § 1B1.13(b)(6) does not give courts carte blanche to consider nonretroactive changes in the law. Instead, it responds to the concerns motivating *McCall* by creating a narrow exception to a general bar on consideration of nonretroactive changes elsewhere in the policy statement, § 1B1.13(c): courts may only do so if the individual in question was sentenced to an unusually long sentence of which they have already served 10 years, and the nonretroactive change in sentencing law created a "gross disparity" between the original sentence and the likely sentence today. *See Capps*, No. 1:11-cr-00108, at 18 (noting that "the Commission squarely addressed" a similar concern raised by the Eighth Circuit "by narrowly limiting the circumstances in which a defendant may be resentenced" as a result of nonretroactive changes). While § 1B1.13 does permit some consideration of nonretroactive changes, it also forecloses consideration of other nonretroactive changes that fall outside § 1B1.13(b)(6)'s narrow parameters.

Although the Sixth Circuit concluded in *McCall* that nonretroactive changes in sentencing law did not constitute "extraordinary and compelling" circumstances, it did so without the benefit of the Commission's expert interpretation of the statutory phrase, and only in light of its "discretion to define' extraordinary and compelling' without reference to the Sentencing Commission's guidance." 56 F.4th at 1054. And it explicitly left open the possibility that the Commission might promulgate a contradictory policy statement. *Id.* at 1054 n.3. Now, Congress's unambiguous directive explicitly instructs courts to ensure that their reduction analysis complies with § 1B1.13. *See* § 3852(c)(1)(A)(i) (explaining that this Court must ensure its "reduction is consistent with applicable policy statements issued by the Sentencing Commission."). And § 1B1.13 explains that

§ 1B1.13(b)(6) is a circumstance in which "extraordinary and compelling reasons exist." § 1B1.13(b). As a result, this Court is no longer free to rely on the Sixth Circuit's conclusion that nonretroactive sentencing developments are irrelevant to our analysis.

This Court finds support for its analysis in the Eastern District of Missouri, where a district court was asked to resolve the same tension between § 1B1.13(b)(6) and Eighth Circuit precedent. *See Capps*, No. 1:11-cr-00108, at 15-20. In *Capps*, the defendant, who had several prior convictions, was sentenced to a mandatory term of life imprisonment when convicted for one count of possession with intent to distribute 50 grams or more of methamphetamine. *Id.* at 5. Once the First Step Act prospectively "eliminated mandatory life sentences for non-violent drug offenders," Capps sought a sentence reduction based on the resulting disparity. *Id.* at 6. Even though the Eighth Circuit had held, prior to the issuance of § 1B1.13(b)(6), that nonretroactive changes in sentencing law were too common to be "extraordinary," *Crandall*, 25 F.4th at 586, the court in *Capps* concluded that it was bound by the policy statement and not *Crandall*, because *Crandall* was decided before the Commission weighed in. *Capps*, No. 1:11-cr-00108, at 15. Having concluded that § 1B1.13(b)(6) was a valid exercise of the authority Congress expressly delegated to the Commission to define "extraordinary and compelling," the court concluded that Mr. Capps presented "exceptional and compelling" reasons for a sentence reduction and granted his motion. *Id.* at 11-15, 19; *see also Padgett*, No. 5:06-cr-00013, at 6-10 (rejecting the Government's argument that § 1B1.13(b)(6) was a textual interpretation of "extraordinary and compelling").

### 4. Application to Mr. Brown

Having concluded that *McCall*'s categorical ban on the consideration of nonretroactive sentencing developments no longer applies, this Court considers whether the circumstances at

issue here are indeed "extraordinary and compelling." As discussed above, the newly promulgated § 1B1.13(b)(6), entitled "Unusually Long Sentence," provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Mr. Brown has already been incarcerated for 28 years, and his sentence of 119 years is, without a doubt, an unusually long one. The Government concedes that Mr. Brown's convictions do not warrant a sentence of over 100 years. By way of comparison, the average federal sentence for murder within the Sixth Circuit last year was 21 years.[2] In Mr. Brown's case, no one was even physically harmed. And the First Step Act's modifications to § 924(c) certainly produce a "gross disparity" between Mr. Brown's sentence and the one he would likely receive today.[3] Today, Mr. Brown would likely be subject to a 44-year sentence—a 68-year difference.

In this Court's view, the question is not whether, broadly speaking, changes in sentencing law are "exceptional and compelling" circumstances. It is instead the appalling length of Mr. Brown's sentence in absolute terms, and the magnitude of disparity between Mr. Brown's sentence and what today a similarly situated defendant would face, that together constitute an "exceptional

---

[2] Sentencing Commission, Statistical Information Packet, Fiscal Year 2022, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/6c22.pdf

[3] Mr. Brown argues that this Court can apply § 1B1.13(b)(6) without considering a change in the law and, therefore, conclude that Mr. Brown is entitled to a reduction under the provision based on having served more than 10 years of an unusually long sentence alone. (ECF No. 464 at 7-9). This Court is not convinced that this is a natural reading of the provision, which appears to require an unusually long sentence as a predicate to consideration of a change in the law. It is worth noting, however, that the section is entitled, "Unusually Long Sentence," which does suggest that length is central to the provision. Nonetheless, this Court need not resolve the issue here.

and compelling" circumstance. *See Padgett*, No. 5:06-cr-00013, at 7 ("'Extraordinary' is an adjective addressing matters of degree, not kind."). This defendant-specific approach to the language of the statute is reflected in the Commission's decision only to allow consideration of nonretroactive changes in the very narrow circumstances outlined in § 1B1.13(b)(6). When considered alongside Mr. Brown's personal development since he was sentenced, discussed further below, this Court has no hesitation in concluding that Mr. Brown's circumstance is exactly the sort envisioned by the Commission in drafting § 1B1.13(b)(6).

### 5. U.S.S.G. § 1B1.13(b)(5)

Mr. Brown also argues that should this Court find itself unable to consider nonretroactive sentencing changes, it may rely on the "catch all" provision in § 1B1.13(b)(5), which provides that "exceptional and compelling" circumstances obtain when:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Although this Court found above that it is free to consider nonretroactive changes in the law under § 1B1.13(b)(6), it also concludes that Mr. Brown is entitled to a sentence reduction under § 1B1.13(b)(5), even if consideration of the nonretroactive change was foreclosed.

The first circumstance this Court considers is the draconian and oppressive length of Mr. Brown's sentence in absolute terms. Simply put, a 119-year sentence guarantees that Mr. Brown will die in prison for a series of crimes in which no one was physically harmed.[4]

---

[4] *McCall* casts doubt on the notion that "the duration of a lawfully imposed sentence" can be compelling. 56 F.4th at 1056. But the court limited its holding to a bar on the consideration of nonretroactive sentences. *Id.* at 1055. And again, *McCall*'s commentary on the length issue, just like the nonretroactivity issue, was made without the benefit of the Commission's expert input. Furthermore, this Court disagrees with the analysis in *Carter*, where the court concluded that "factoring the length of Carter's sentence into a Section 1B1.13(b)(5) analysis . . . would run afoul

The length of Mr. Brown's sentence is even more jarring when cast in comparative terms.[5] As mentioned above, Mr. Brown's sentence is almost six times longer than the average federal sentence for murder within the Sixth Circuit last year.[6] Mr. Brown's sentence is also long when compared to the time that his co-defendants served in prison. Of his co-defendants, Mr. Brown is the only one who remains in prison. The co-defendants who pleaded guilty were sentenced to between eight months and fourteen years in prison. (ECF No. 455 at 16). One of Mr. Brown's co-defendants, James Brown, who like him, elected to go to trial, was sentenced to 54 years, 2 months, but was released in May 2021—approximately 28 years early. (ECF No. 455 at 16). And Mr. Phipps, who was characterized as similarly culpable to Mr. Brown, was sentenced to 100 years, 10 months. (*Id.*). Mr. Phipps had both a more serious criminal history and a worse prison disciplinary record compared to Mr. Brown, but was also released in May 2021, with approximately 74 years left on his sentence. (*Id.*). Stepping back from the weeds of legal analysis, this Court can hardly think of a phrase more fitting for these circumstances than "extraordinary and compelling." To allow Mr. Brown to languish in prison for the rest of his life while his co-defendants, even those who were comparably culpable, are afforded the opportunity to start life in the community anew would be a grave injustice. *See Padgett*, 5:06-cr-00013, at 9 (explaining that

---

of the Sentencing Commission's directive that 'except as provided in Section 1B1.13(b)(6), a change in the law . . . shall not be considered.'" 2024 WL 136777, at *9 (cleaned up) (quoting § 1B1.13(b)(c)). Consideration of a sentence's length is not logically inextricable from consideration of a change in the law since that sentence was imposed.

[5] This Court wishes to make explicit that, for the purposes of its § 1B1.13(b)(5) analysis, it is not comparing Mr. Brown's sentence to the sentence that he would be likely to receive today or to the sentence that someone else who committed crimes like Mr. Brown's today would receive. In other words, it is not considering the nonretroactive changes to the way in which § 924(c) violations are sentenced. It is this Court's view that the combination of circumstances articulated in this subsection can stand alone as "extraordinary and compelling."

[6] Sentencing Commission, Statistical Information Packet, Fiscal Year 2022, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/6c22.pdf.

Black's Law Dictionary defines "compelling need" to include a "need so great that irreparable harm or injustice would result if it is not met"). Not to mention that it would fly in the face of Congress's clear instruction to ensure that sentences account for the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).[7]

Other circumstances also support the propriety of sentence reduction under § 1B1.13(b)(5). The Government concedes that there is "some evidence of [his] rehabilitation in the intervening years," (*id.*), which this Court can consider alongside other factors when considering whether "extraordinary and compelling" circumstances exist. § 1B1.13(d). Specifically, Mr. Brown submits his Summary Reentry Plan – Progress Report, assembled by BOP. The Report's author writes that Mr. Brown "works tirelessly to ensure his assigned work area and the unit is prepared for sanitation inspection" every day, and that he is "a highly responsible worker and can be relied upon by the institution to deliver on his work with minimal oversight." (ECF No. 455-1 at 3). The Report's author also notes that through management of a team of incarcerated people, Mr. Brown "demonstrates leadership qualities and is an example to others of responsibility and reliability." (*Id.*). Such a glowing commendation is no small feat in an institutional setting. Mr. Brown has also taken advantage of educational opportunities during his time in prison. (See ECF No. 45 at 24). These steps to better himself are all the more admirable given that Mr. Brown had every reason to expect that he would spend the rest of his life in prison.

Furthermore, Mr. Brown's disciplinary history over the past nearly thirty years is above average, bearing only ten, non-violent blemishes. For example, Mr. Brown's most recent

---

[7] In this sense, Brown's case is different from the facts in *Carter*, where the court declined to grant a sentence reduction under § 1B1.13(b)(5); *Carter* makes no mention of co-defendants with disparate sentences or amounts of time served.

infraction, in 2021, was for unauthorized possession of an extra pillow and blanket.  (ECF No. 455 at 24).  Even the most rule-abiding among us would likely collect a few disciplinary infractions if subject to a host of rules governing the minutiae of daily life and monitored around-the-clock—for decades.  And as the Government acknowledged, because of Mr. Brown's age—now, 56—he presents, as a statistical matter, a reduced risk of recidivism.  (ECF No. 428 at 7).

Mr. Brown also details the strong family support that would await him upon release.  His brothers live at the same location in different residences and have offered Mr. Brown both a place to stay and financial support until Mr. Brown can begin to support himself.  They offer to assist him in finding a job and getting a driver's license, to let him use one of their vehicles to get to work, and to provide monitoring and mental support "to make sure [Rufus] succeeds."  (ECF No. 455-2).  Both Mr. Brown's mother and one of his brothers are in poor health; Mr. Brown's mother is no longer able to travel to South Carolina to visit her son due to her age, (ECF No. 455 at 6), and his brother has been told by doctors that he has 3 to 5 years to live, (*id.* at 12).  Although this reality faces many incarcerated people, it is worth noting that without release, Mr. Brown may never be able to see these members of his family again, all for crimes committed nearly 30 years ago in which no one was physically harmed.

Section 1B1.13(b)(5) requires that this Court consider whether these circumstances, in combination, are similar in gravity to the following: medical circumstances of the defendant, age of the defendant, family circumstances of the defendant, and either sexual or physical abuse of the defendant.  This Court acknowledges that several of Mr. Brown's circumstances detailed above are experienced by many incarcerated people and therefore, on their own, could not be "extraordinary and compelling."  But placing particular emphasis on the extraordinary length of Mr. Brown's sentence and its shocking disparity with the time that his co-defendants served, this

18

Court concludes that Mr. Brown's circumstances are similar in gravity and, therefore, "extraordinary and compelling" under § 1B1.13(b)(5).

## C. Consistency with Applicable Policy Statements

The Sentencing Commission's recently promulgated Amended Policy Statement, unlike its predecessor, explicitly applies to compassionate release motions brought by incarcerated persons. U.S.S.G. § 1B1.13 (beginning "[u]pon the motion of the Director of the Bureau of Prisons *or the defendant* . . .) (emphasis added). A reduction is consistent with the current version of § 1B1.13 if, in addition to the existence of an "extraordinary and compelling reason," "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Having already determined that there is an "extraordinary and compelling reason" for a reduction in Mr. Brown's sentence, this Court turns to whether Mr. Brown is a danger to the safety of any other person or to the community. Surveying the evidence detailed above of Mr. Brown's reduced recidivism risk, rehabilitation, and the growth of his character since his sentencing twenty-eight years ago, this Court concludes that Mr. Brown is not a danger to the safety of others or to the community.

## D. Section 3553(a) Sentencing Factors

This Court must also consider the sentencing factors in § 3553(a), including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement ... issued by the Sentencing Commission . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Even when this Court concludes that a sentence reduction is appropriate, this Court is not obligated to modify the sentence in a way that effectuates Mr. Brown's immediate release from prison. *See Taniguchi*, 2020 WL 6390061, at *6. A downward adjustment may be made "even if it results in continued incarceration." *Young*, 2020 WL 1047815, at *10; *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("A district court could . . . reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place.").

Mr. Brown argues that the sentencing factors militate in favor of immediate release, emphasizing his personal growth, the family members that stand ready to support him upon release, and the need to avoid sentence disparities—both between former and current sentencing guidelines, but also between co-defendants. (ECF No. 455 at 21-29). These considerations have been detailed at length above. But the Government contends that even if Mr. Brown's sentence is reduced, he should remain incarcerated. Mr. Brown's crimes, although no one was physically harmed, were undoubtedly serious. The only reason that Mr. Brown was not present at the string

20

of armed robberies that he orchestrated was because he recruited a minor to be the gunman while he waited at home.  (ECF No. 455 at 7).  For this reason, and because Mr. Brown would likely be sentenced to 44 years and 2 months today, the Government argues that he should serve at least 10 more years in prison.  (ECF No. 428 at 8).

Having considered the § 3553 factors, this Court concludes that a 44-year sentence is not warranted for the crimes at issue here, which did not result in either death or injury of any robbery victim.  Imposing such a sentence on Mr. Brown would result in a period of incarceration that is more than double the average sentences for murder and kidnapping in this circuit between 2015 and 2019.  Cases like these "produce sentences that would be laughable if only there weren't real people on the receiving end of them."  *United States v. Halloway*, 68 F. Supp. 3d 310, 312 (E.D.N.Y. 2014).  Mr. Brown has already been incarcerated for 28 years and has shown remarkable growth during that time.

Moreover, the disparity between Mr. Brown and his co-defendants also weighs heavily in favor or immediate release.  Especially when Mr. Brown's criminal and disciplinary history is less serious than that of Mr. Phipps, who was characterized as a comparably culpable ringleader, there is no reason to conclude that Mr. Brown should remain incarcerated.

## IV.    CONCLUSION

For the reasons stated above**,** Defendant's motion is **GRANTED**, and this Court hereby **REDUCES** Mr. Brown's sentence to time served, plus a term of three years of supervised release.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY, CHIEF JUDGE**
**DATED: February 2, 2024**          **UNITED STATES DISTRICT COURT**